**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**KATHY KOHLER,**

**Plaintiff,**

**v.**                                          **7:04-CV-720**
                                               **(GLS)**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

**Defendant.**

---

**APPEARANCES:**                  **OF COUNSEL:**

**FOR THE PLAINTIFF:**

OFFICE OF MARK A. SCHNEIDER      MARK A. SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, New York 12901

**FOR THE DEFENDANT:**

HON. GLENN T. SUDDABY            WILLIAM H. PEASE
United States Attorney           Assistant U.S. Attorney
PO Box 7198
100 South Clinton Street
Syracuse, New York 13261

**Gary L. Sharpe**
**U.S. District Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Kathy Kohler challenges the denial of disability benefits by the Commissioner of Social Security.  Kohler brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final determination. Having reviewed the administrative record, the court affirms the Commissioner's decision.

### **II. Procedural History**

Kohler alleges disability due to bipolar disorder starting June 15, 1996.  After she filed for Social Security Disability Insurance (SSDI) in March 2002, her application was denied, and a hearing was conducted on February 20, 2004.  Pursuant to a court order, the decision was vacated and the case remanded on October 5, because the tape recording of the hearing became garbled.  On February 15, 2005, a second hearing was conducted by Administrative Law Judge (ALJ) Carl Stephen.  On April 15, the ALJ issued a decision denying benefits, and that decision became the Commissioner's final determination.

### **III. Contentions**

Kohler contends that the ALJ's decision is not supported by

substantial evidence.  More specifically, she claims that the ALJ: (1) erroneously found her bipolar disorder non-severe, (2) discounted her treating physician's opinion, (3) incorrectly determined her RFC, and (4) failed to give the vocational expert a correct hypothetical.  The Commissioner counters that substantial evidence supports the ALJ's disability determination.

### IV. <u>Background</u>[1]

At the administrative hearing held on February 15, 2005, Kohler testified that she was 48 years old.  (Tr. 278).  She lives alone in a mobile home and is able to drive a car by herself.  (Tr. 279).  She has a 10th grade education and has previously worked as a convenience store cashier, baker, house cleaner, industrial cleaner and babysitter.  (Tr. 280-284).  She currently babysits a down syndrome child once a week through a community outreach program.  (Tr. 280).  She testified that she does not socialize with people except for family.  (Tr. 289).  She also testified that she has intermittent crying spells.  (Tr. 290).  When asked about her sleeping habits, Kohler stated that she either has a difficult time falling

---

[1]The defendant did not include a statement of facts.  Therefore, the following facts were taken from the administrative record and Kohler's statement of facts.  *See Pl. Brief, pp. 2-12; Dkt. No. 7.*

asleep or will sleep continuously for long periods.  (Tr. 291).

Overall, Kohler testified that anxiety around people has prevented her from maintaining employment.  (Tr. 284).  She testified that she left her cashier job because "it made [her] too nervous."  (Tr. 281).  She testified that she left her supermarket job because it involved too many hours and that she would often be too exhausted to go.  *See id.*  In response to a series of questions regarding how she feels around large groups of people, she stated that she just wants to go home.  (Tr. 290).  Kohler testified that she purposefully does her grocery shopping at night to avoid interaction with others.  (Tr. 289).  When asked why she does not pursue child care as a means of full-time employment, she responded that "I don't want to[.]..." (Tr. 290).

Esperanza DeStefano, a vocational expert, also testifed at the hearing.  The ALJ asked that DeStefano consider an individual that has no exertional limitations but "because of *occasional* problems with detailed instructions, dealing with stress, they're limited to low-stress, [and] simple work without a lot of exposure to individuals."  (Tr. 297) (emphasis added). Given these factors, the ALJ asked if this type of individual could do Kohler's past work.  *See id.*  DeStefano responded in the affirmative, and

4

stated that a range of work would be possible as long as it was low-stress. (Tr. 298). For example, DeStefano found that an individual with limitations similar to Kohler could perform work as a cleaner. DeStefano also found that a position as a mail clerk, messenger, or hand packer would be possible. *See id.*

Next, the ALJ changed his hypothetical to consider an individual with *frequent* problems with detailed instructions and dealing with stress. (Tr. 299) (emphasis added). In considering this hypothetical, DeStefano testified that an individual with frequent limitations could not work as a cleaner because it required greater attention to detail. (Tr. 299). However, DeStefano indicated that frequent limitations with stress do not effect positions as a mail clerk, messenger, or hand packer. DeStefano attributes this to the fact that by nature these jobs are very simple and low-stress. (Tr. 301).

The ALJ's final hypothetical asked DeStefano to consider whether an individual with *constant* problems with detailed instructions and dealing with stress could perform the position as a mail clerk, messenger, or hand packer. *See id.* (emphasis added). In response, DeStefano testified that there were no jobs available to someone with constant limitations from

5

stress.  She further noted that every job comes with some level of stress,

no matter how small, because a person must comply with a certain

productivity level.  (Tr. 301).

## A.    <u>Medical Evidence</u>

Overall, Kohler has been hospitalized on three separate occasions

for her bipolar disorder.  In September 1992, she was first hospitalized

because of a manic episode following a period of marital problems.  (Tr.

181-82).  At the time, she was prescribed Lithium to regulate her mania.

(Tr. 128).  In May 1993, she was again admitted with complaints of

insomnia, and her medications were adjusted.  (Tr. 158).  In September

1996, she was examined by Dr. Naveen Achar, who noted that since being

on Lithium, Kohler's depressive and manic symptoms were well-controlled,

and she required no further hospitalizations.  (Tr. 128).  Dr. Achar observed

that Kohler's "thought processes are logical and goal directed without

psychotic features[.]..."  (Tr. 129).  He further observed that she was

oriented and displayed good memory, concentration, insight and judgment.

*See id.*  Overall, Dr. Achar diagnosed Kohler with Bipolar Disorder, Type I,

with mixed features.  (Tr. 128).  He also assigned her a global assessment

functioning of 60, indicative of no more than moderate symptoms.  (Tr.

6

129).

In April 1998, Kohler was hospitalized for a psychotic episode following a period of considerable stress.  (Tr. 102).  Upon examination, the admitting doctor observed that Kohler had tangential thoughts, and that her responses were inappropriate and vague.  (Tr. 104).  An adjustment of Kohler's medications cleared up her symptoms.  (Tr. 100).  A discharge diagnosis indicated mild Lithium toxicity and bipolar disorder with a mixed mild relapse.  *See id.*

In May 2000, Kohler began seeing nurse practitioner Lorna Jewell. At this time, Kohler stated that she was feeling good, managing daily stress well, taking her medication, and looking to find childcare work.  (Tr. 127). In October, Jewell noted that Kohler was making plans for herself and pleased with her life.  *See id.*  In addition, Jewell noted that Kohler was doing well on her medications and emotionally stable.  *See id.*

In January 2001, Jewell noted that Kohler was stable, taking her Lithium with good effect, and had also begun advertising for babysitting services out of her home.  (Tr. 123).  However, later that same month, Kohler was admitted to the emergency room following an episode of manic behavior.  (Tr. 121).  Kohler's mood was elevated, she was sleeping poorly,

and she had not taken her Lithium for two days.  (Tr. 119).  Following an adjustment of Kohler's medications, her symptoms abated, and she was fully cognizant.  (Tr. 121).

In April 2001, Jewell noted that Kohler was in contact with Vocational Education Services for Individuals with Disabilities (VESID) for job training and placement.  (Tr. 117).  Jewell further noted that Kohler was emotionally stable and well-maintained on her medication.  *See id.*  In August, Jewell noted that Kohler was "alert" and "business-like."  (Tr. 115).

From August 2001 to May 2002, Jewell noted that Kohler was taking her medication with good effect, alert and cognizant.  (Tr. 114, 115).  From May 2002 to July 2003, Kohler complained to Jewell that she felt depressed and was sleeping a lot.  (Tr. 193).  Kohler also reported low energy levels and little interest in doing activities that she had previously enjoyed.  *See id.*  Jewell observed that she appeared to have a flat expression and looked tired.  (Tr. 266, 271).  Jewell concluded that Kohler had a sleep disorder, and recommended that she continue on her medication and therapy.  (Tr. 270).

On October 9, 2003, Dr. Brett Hartman, a psychiatric consultant, examined Kohler.  Dr. Hartman noted that Kohler's current medications

were Lithium and Wellbutrin.  (Tr. 204, 205).  He further noted that Kohler's affect appeared restricted and mood dysphoric, her thoughts were coherent and intact, and her concentration appeared only mildly impaired.  *See id.* Dr. Hartman diagnosed Kohler with bipolar disorder.  *See id.*

In January 2004, Jewell wrote a letter regarding Kohler's ability to do work.  In her letter, Jewell described Kohler's desire to work and failed attempts to manage low stress jobs.  (Tr. 211).  Jewell concluded that if Kohler could maintain full-time employment, she would do so.  (Tr. 212).

## V. Discussion

## A.    Standard and Scope of Review

A court's review of the Commissioner's final decision is limited to determining whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Urtz v. Callahan*, 965 F. Supp. 324, 326 (N.D.N.Y. 1997) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Although the Commissioner is ultimately responsible for determining a claimant's eligibility, the actual disability determination is made by an ALJ.  The ALJ's decision is subject to judicial review on appeal.  *See* 42 U.S.C. § 405(g).  A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied,

even if it appears to be supported by substantial evidence.  *See Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's "findings is limited to assessing whether substantial evidence in the record supports those findings."  *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see also* 42 U.S.C. § 405(g).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'"  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Id*.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains

substantial support for the ALJ's decision.  *See  Rutherford v. Schweiker*,
685 F.2d 60, 62 (2d Cir. 1982).

The court has authority to reverse with or without remand.  *See* 42
U.S.C. § 405(g).  Remand is appropriate where there are gaps in the
record or further development of the evidence is needed.  *See Parker v.
Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Cutler v. Weinberger*,
516 F.2d 1282, 1287 (2d Cir. 1975) (remand to permit claimant to produce
further evidence).  Reversal is appropriate, however, when there is
"persuasive proof of disability" in the record and "remand for further
evidentiary proceedings would serve no purpose."  *Parker*, 626 F.2d at
235; *see also Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir.
1992); *Carroll v. Sec'y of HHS*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal
without remand for additional evidence particularly appropriate where
remand would result in lengthening the "painfully slow process" of
determining disability).

**B.    Five-Step Disability Determination**

The definition of "disabled" is the same for purposes of receiving
SSDI and SSI benefits.  To be considered disabled, a plaintiff seeking
benefits must establish an "inability to engage in any substantial gainful

11

activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve

months[.]" 42 U.S.C. §§ 423(d)(1)(A),1382c(a)(3)(A).[2]  The Commissioner

uses a five-step process to evaluate SSDI and SSI claims.  *See* 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4).[3]  Step One requires the ALJ to

_____

[2]In addition, a claimant's

> physical or mental impairment or impairments [must be] of such
> severity that [s]he is not only unable to do her previous work but
> cannot, considering [her] age, education, and work experience, engage
> in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the
> immediate area in which [s]he lives, or whether a specific job vacancy
> exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Therefore, a plaintiff must not only carry a medically determinable impairment but an
impairment so severe as to prevent her from engaging in any kind of substantial gainful work
which exists in the national economy.

[3]In general, the steps laid out in § 404.1520 apply to the evaluation of physical and
mental impairments.  In addition, a "special technique" must be used during the administrative
review process to evaluate severity of a mental impairment.  *See* 20 C.F.R. §§ 404.1520a(b)-
(e), 416.920a(b)-(e).  Section 404.1520a requires that the claimant's functional limitations be
considered in four broad areas: (1) activities of daily living, (2) social functioning, (3)
concentration and (4) episodes of decompensation.  *See* 20 C.F.R. §§ 404.1520a(c)(3),
416.920a(c)(3).  On June 3, 2002, the record reveals that Dr. Linden Bruni conducted a
psychiatric review of Kohler's condition.  (Tr. 136-148).  Dr. Bruni noted that Kohler had *slight*
restrictions in daily living; she had *moderate* difficulties with social functioning; *seldom*
difficulties with concentration; and no episodes of repeated deterioration.  The ALJ also
discussed the four areas of functional limitation required under § 404.1520a throughout the
decision.  (Tr. 218-221).  Accordingly, the severity of Kohler's bipolar was adequately
addressed throughout the administrative review process.

12

determine whether the claimant is presently engaging in substantial gainful activity (SGA).  *See* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If a claimant is engaged in SGA, she will not be considered disabled.  If the claimant is not engaged in SGA, Step Two requires the ALJ to determine whether the claimant has a severe impairment.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant is found to suffer from a severe impairment, Step Three requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment meets or equals a listed impairment, the claimant is presumptively disabled.  *See Ferraris*, 728 F.2d at 584.  If the claimant is not presumptively disabled, Step Four requires the ALJ to consider whether the claimant's Residual Functional Capacity (RFC) precludes the performance of her past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At Step Five, the ALJ determines whether the claimant can do any other work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant has the burden of showing that she cannot perform past relevant work.  *See Ferraris*, 728 F.2d at 584.  However, once the claimant

13

meets that burden, benefits can only be denied by showing, with specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Sec'y of HHS*, 910 F.2d 64, 65 (2d Cir. 1990); *Ferraris*, 728 F.2d at 584. In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if the claimant can perform other work existing in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also N.Y. v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

In this case, the ALJ found that Kohler satisfied Step One because she had not worked since June 15, 1996. (Tr. 218). In Step Two, the ALJ determined that Kohler had a severe impairment do to her bipolar disorder. (Tr. 219). In Step Three, the ALJ determined that her impairments failed to equal an impairment or combination of impairments listed in, or medically equal to, ones listed in the regulations. *See id.* In Step Four, the ALJ determined that Kohler retained the RFC to perform work at any exertional level displaying only occasional problems with detailed instructions, handling work stress, and dealing with others. (Tr. 221). Based on this finding, the ALJ concluded that Kohler could do her past relevant work as a

14

house cleaner. *See id.* In addition, at Step Five, the ALJ determined that Kohler could also do work as a mail clerk, messenger, or hand packer. (Tr. 222). Consequently, he found Kohler not disabled and denied benefits. *See id.*

## C.    Severe Impairment

Kohler argues that the ALJ erroneously determined that her mental impairment was not severe. She specifically contends that her bipolar disorder directs a finding of disability under "the listings." *See* 20 C.F.R. 404, Subpt. P, App. 1. This contention is without merit. Overall, while Kohler may experience some of the symptoms listed, her condition is well-controlled by medication. More specifically, Section 12.04 defines affective disorders as:

> Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation[.]

20 C.F.R. 404, Subpt. P, App. 1, Listing 12.04.[4]

Here, as the ALJ noted, Kohler's condition is stabilized significantly when she takes Lithium. (Tr. 218-219). In addition, Dr. Achar's psychiatric

---

[4]The requirements for severity under Listing 12.04 are fully set out in 20 C.F.R. 404, Subpt. P, App. 1, Listing 12.04, A-C.

assessment of Kohler described her as calm with a bright effect and that

her symptoms were well-controlled on medication.  (Tr. 129).  Dr. Achar

also observed that Kohler's concentration, insight, and judgment were

good.  *See id.*  The ALJ further noted that nurse practitioner Jewell

repeatedly commented that Kohler was emotionally stable and doing well

on her medication, and that she was only hospitalized once over the

course of several years.  *See id.*  Finally, the ALJ relied on the opinion of

Dr. Brett Hartman.  Dr. Hartman noted that Kohler's thoughts,

concentration and memory were intact or only mildly impaired.  *See id.*

Accordingly, the ALJ's findings were supported by substantial evidence

and must be affirmed.

**D.    Treating Opinion**

Kohler contends that the ALJ did not give proper weight to the

opinion of nurse practitioner Jewell, who stated that Kohler would find and

maintain a full-time job if possible.  Generally, the opinion of a treating

physician is given controlling weight if it "is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence[.]"  *Foxman v. Barnhart*,

157 Fed. Appx. 344, 346 (2d Cir. 2005) (citing 20 C.F.R. § 404.1527(d)(2));

20 C.F.R. § 416.927(d)(2).  An "ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion."  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks and citation omitted).  Moreover, a nurse practitioner is not an "acceptable medical source" who can give a medical opinion establishing an impairment.  *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).  "Although reports of a therapist or registered nurse are not deemed to be a 'medical source' under the regulations,...the ALJ can consider these reports as 'other source' evidence."  *O'Halloran v. Barnhart,* 328 F. Supp. 2d 388, 394 (W.D.N.Y. 2004); *See also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).[5]  The *O'Halloran* court noted that "[a] treating source's statement that a plaintiff 'is disabled,' however, is not considered a 'medical opinion' under the treating physician's rule, and is not entitled to controlling weight because it represents an opinion on an issue reserved to the Commissioner."  *See Williams v. Comm'r of Soc.*

---

[5]The regulations provide:

Other sources. In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to–

(1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists[.]...

20 C.F.R §§ 404.1513(d)(1), 416.913(d)(1).

*Sec.,* 423 F. Supp. 2d 77, 83 (W.D.N.Y. 2006) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).

Overall, "the ultimate finding of whether a claimant is disabled and cannot work...[is] reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotation marks and citation omitted). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those [sic] data indicate disability." *Id.* Thus, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Id.* Furthermore, where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Here, Kohler argues that Jewell's statement that Kohler would work if possible should have been given greater weight by the ALJ.[6] This contention is without merit. The ALJ is not required to give controlling weight to Jewell's statement because Jewell is a nurse practitioner.

---

[6]In January 2004, in a letter to Kohler's attorney, Jewell commented: "if Ms. Kohler were capable of working in a sustainable manner in a full-time position, she would have and maintain such a job." (Tr. 212).

Therefore, Jewell is not an acceptable medical source and her opinion is not sufficient to establish a medical impairment.  Nevertheless, the ALJ did give some weight to Jewell's statement, but her belief that Kohler is capable of work is contradicted by the rest of the record, including her own positive reviews of Kohler.  Accordingly, the ALJ's findings are supported by substantial evidence and must be affirmed.

**E.    Residual Functional Capacity**

Kohler argues that the ALJ improperly determined that she is capable of performing her past work as a house cleaner.  This contention is also without merit.  At the review level relevant here, the responsibility for determining a claimant's RFC rests with the ALJ.  *See* 20 C.F.R. §§ 404.1546(a), 416.946(a).  An ALJ's RFC assessment is a medical determination that must be based on probative medical evidence of record. *See Gray v. Chater*, 903 F. Supp. 293, 301 (N.D.N.Y. 1995).  An ALJ may not "substitute his own judgment for [a] competent medical opinion." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

Here, the medical record does not support a finding of disability.  As the ALJ noted, Kohler has remained stable on her medication for several years.  In support of this finding, the ALJ cited the opinion of Dr. Achar,

who assigned Kohler a global assessment of functioning at 60, indicative of no more than moderate symptoms. *See id.* Dr Achar also noted that Kohler's highest assessment for the year was 75, which suggests that her symptoms were transient and she had acceptable reactions to stress. (Tr. 219).

In further support, the ALJ cited the treatment notes of nurse practitioner Jewell, who commented that Kohler was emotionally stable and looking to find work. (Tr. 218). In May of 2000, Kohler and Jewell discussed her future plans for a child care business. *See id.* In January 2001, Kohler was hospitalized because she failed to take her Lithium for two days. However, she was stabilized with medication and followed up the next day with Jewell fully oriented. *See id.* By April 2001, Jewell noted that Kohler was doing very well and in contact with VESID for job training and placement. *See id.* Jewell further reported that she was "alert" and "business-like" and had gone several years with only one hospitalization for a manic episode. *See id.*

Lastly, the ALJ also considered the consultative psychiatric examination of Dr. Hartman. (Tr. 219). In October 2003, Dr. Hartman diagnosed her with bipolar disorder. *See id.* He further noted that her

20

thoughts were coherent, her memory was intact, and her concentration only appeared mildly impaired.  *See id.*  Dr. Hartman concluded that Kohler retained the capacity to follow and understand simple instructions, had a fair ability to make decisions, and displayed only mild problems relating to others and dealing with normal work stress.  *See id.*

Based on the record, the ALJ found that when properly medicated, Kohler's symptoms were mild in nature and well-controlled.  (Tr. 219). Therefore, the ALJ properly concluded that Kohler had no more then occasional problems with understanding, following instructions, dealing with stress, and working with others.  *See id.*  Accordingly, the ALJ's findings were supported by substantial evidence and must be affirmed.

## F.   <u>Vocational Expert Testimony</u>

Kohler claims that the vocational expert based her opinion on improper findings.  A vocational expert may provide testimony regarding the existence of jobs in the national economy.  *See Dumas v. Schweiker,* 712 F.2d 1545, 1553-54 (2d Cir. 1983).  "The vocational expert's testimony is only useful if it addresses whether the particular claimant, with [her] limitations and capabilities, can realistically perform a particular job."  *Jehn v. Barnhart*, 408 F. Supp. 2d 127, 135 (E.D.N.Y. 2006) (internal quotation

marks and citation omitted).  "Proper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform." *Lugo v. Chater*, 932 F. Supp. 497, 504 (S.D.N.Y. 1996).

Here, Kohler contends that the ALJ's hypothetical to the vocational expert was improper because it considered a person with only occasional problems in occupational and social functioning, and her limitations are constant.  This contention is without merit because a finding of more than occasional problems is not supported by the record.  As noted above, the ALJ properly considered the opinions of Dr. Achar, Dr. Hartman, and Jewell, in determining what work Kohler was capable of performing.  With the exception of Jewell's statement that Kohler would work if possible, there is no evidence that Kohler is severely limited by her bipolar disorder.  Further, the record reflects that Kohler's hospitalizations were related to problems with her medications and not indicative of a severe condition precluding her from work.  Therefore, the ALJ gave the proper hypothetical to the vocational expert.  Accordingly, the ALJ's findings were supported by substantial evidence and must be affirmed.

## F.    Subjective Complaints of Pain

Kohler contends that the ALJ improperly considered her subjective complaints of pain.  The Commissioner is obligated to evaluate all of a claimant's "symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1529(a), 416.929(a).  The ALJ must perform a two-step analysis.  *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Crouch v. Comm'r, Soc. Sec. Admin.*, 01-CV-899, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003).  "First, the ALJ must determine, based upon the objective medical evidence, whether the impairments "could reasonably be expected to produce the pain[7] or other symptoms alleged[.]..."  *Crouch*, 2003 WL 22145644, at *10 (citing 20 C.F.R. §§ 404.1529(a), 416.929(a)).  "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity

---

[7]The pain must be properly evaluated, considering the applicant's credibility and motivation as well as the medical evidence of impairment to reach an independent judgment concerning the true extent of the alleged pain, and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  *See Lugo v. Chater*, 932 F. Supp. 497, 504 (S.D.N.Y. 1996).

to work." *Id.* (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

A plaintiff may suffer some degree of pain as a result of a condition. However, some pain does not automatically translate into disabling pain. *See Dumas*, 712 F.2d at 1552 ("disability requires more than mere inability to work without pain").  Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability[.]..." 42 U.S.C. § 423(d)(5)(A).

Where the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors.  These factors include "daily activities;...the location, duration, frequency and intensity of [claimant's] pain or other symptoms;...[t]he type, dosage, effectiveness and side effects of...medication;" and other treatments or measures to relieve those symptoms.  20 C.F.R. §§ 404.1529(c)(3)(I)-(vii), 416.929(c)(3)(I)-(vii); Social Security Ruling (SSR) 96-7p.  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p.  Therefore, "[a]n [ALJ] may properly reject [subjective complaints of pain] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of

24

credibility, but must set forth his or her reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, Kohler specifically claims that the ALJ ignored her subjective complaints, including her anxiety in public.  This contention is without merit. In his decision, the ALJ noted Kohler's problems with working around others, in addition to her sleep disorder and crying spells.  (Tr. 220).  The ALJ also noted that Kohler shops at night to avoid people and experiences dry mouth and fatigue as side effects of her medication.  *See id.*  The ALJ further considered Kohler's testimony that she does not believe she could work full-time because she would experience a manic episode and probably require hospitalization.  *See id.*

Nevertheless, in considering these factors, the ALJ also noted factors that contradict a finding of disability.  For example, the ALJ noted that Kohler testified that she babysits and planned to open up a child care service from home.  (Tr. 221).  Also, despite periodic hospitalizations, treating opinions indicate that she is emotionally stable and has maintained a high global assessment of functioning.  *See id.*  Overall, the ALJ noted

25

that Kohler's limitations due to her bipolar disorder were well-controlled when properly taking her medication.  *See id.*  Thus, based on these findings, the ALJ concluded that she does not experience symptoms of such frequency, intensity or duration as to preclude work.  *See id.* Accordingly, the ALJ's findings were supported by substantial evidence, and the decision is affirmed.

     **WHEREFORE**, for the foregoing reasons, it is hereby

     **ORDERED**, that the decision denying benefits is **AFFIRMED**; and it is further

     **ORDERED**, that the Clerk of the Court provide a copy of this Order to the parties.

     **IT IS SO ORDERED.**

November 3, 2006
Albany, New York

Gary L. Sharpe
U.S. District Judge

26